FILED
GREAT FALLS DIV.

'06 SEP 18 AM 8 34

PATRICK E. DUFFY, CLERK
BY
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

DEBRA AMES,

               Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

               Defendant.

CAUSE NO. CV 05-39-M-CSO

FINDINGS AND RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE

    Plaintiff Debra Ames (Ames) instituted this action to obtain
judicial review of the decision of Defendant Commissioner of
Social Security (Commissioner), denying her application for
supplemental security income (SSI) benefits under Title XVI of
the Act, 42 U.S.C. §§ 1381-1383c.

    Ames has moved for summary judgment, and the Commissioner
has in turn moved to remand pursuant to sentence four of 42
U.S.C. § 405(g). Having considered the issues presented by the
parties, together with the administrative record, the Court
recommends that Ames's motion for summary judgment be denied, and

PAGE 1

the Commissioner's motion to remand be granted.

## I. PROCEDURAL BACKGROUND

Ames brings this action challenging the Commissioner's decision denying her application for benefits. She filed an application for benefits on July 31, 2000, alleging disability due to a congenital spine deformity, degenerative arthritis, migraine headaches, and arm and hand numbness. Tr. 52, 54, 88-91, 100. Ames pursued her application through the hearing stage, and in a decision dated October 18, 2001, an ALJ found that she was not disabled because she could perform a limited range of light work. Tr. 11-16. The Appeals Council denied Ames's request for review, and she commenced an action seeking judicial review in the United States District Court for the Eastern District of Washington. Tr. 246, 298-300. In March 2003, that court remanded the case to the Commissioner for further administrative proceedings. Tr. 298-300.

On November 6, 2004, after a new hearing, a second ALJ issued a decision finding that Ames was not disabled within the meaning of the Act and denying her application for benefits. Tr. 246-255. On January 14, 2005, the Appeals Council denied Ames's request for review, rendering the ALJ's decision the agency's final decision for purposes of judicial review. Tr. 5-7. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

PAGE 2

## II.  *STANDARD OF REVIEW*

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  Substantial evidence also has been described as "more than a mere scintilla" but "less than a preponderance."  Sandegathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  The District Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion.  Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas, 278 F.3d at 954 (citation omitted).

## III. *BURDEN OF PROOF*

A claimant is disabled for purposes of the Social Security

PAGE 3

Act if: (1) the claimant has a medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than twelve months, and (2) the impairment or
impairments are of such severity that, considering the claimant's
age, education and work experience, the claimant is not only
unable to perform previous work, but the claimant cannot "engage
in any other kind of substantial gainful work which exists in the
national economy." Schneider v. Commr. of Soc. Sec. Admin., 223
F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-
(B)).

In determining whether a claimant is disabled, the
Commissioner follows a five-step sequential evaluation process.
Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42
U.S.C. § 1382C(a)(3)).

1.  The claimant must first show that he or she is not
    currently engaged in substantial gainful activity. Id.

2.  If not so engaged, the claimant must next show that he
    or she has a severe impairment.   Id.

3.  The claimant is conclusively presumed disabled if his
    or her impairments are equivalent to one on the list of
    impairments that the Commissioner acknowledges are so
    severe as to preclude substantial gainful activity.

4.  If the claimant does not have a listed impairment, then
    the claimant must establish a prima facie case of
    disability by showing an inability to engage in past
    work because of the medical impairments. Corrao, 20
    F.3d at 946.

5.  Upon such a showing, the burden then shifts to the

> Commissioner to prove that plaintiff can engage in
> other types of substantial gainful work existing in the
> national economy given the claimant's age, education,
> work experience and residual functional capacity.
> Jones, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not
disabled at any point in this process, the review process is
terminated.   Corrao, 20 F.3d at 946.

## IV.   DISCUSSION

Following the steps in the sequential evaluation process,
the ALJ first found that Ames had not engaged in substantial
gainful activity since the January 1, 1994, alleged disability
onset date.   Tr. 254.   The ALJ next found that Ames suffered from
"degenerative disk disease of the lumbar spine; arthralgias; and
depression NOS" (not otherwise specified), each of which
constituted a severe impairment.   Tr. 254.   However, the ALJ
found that those impairments did not meet or equal the severity
of any impairment described in the Listing of Impairments.   Tr.
254.   The ALJ then found that "[t]he claimant's allegations
regarding her limitations [were] not totally credible...."   Tr.
254.   The ALJ next determined that Ames retained the residual
functional capacity to perform a limited range of light work, and
was therefore unable to perform any of her past relevant work.
Tr. 254.   Using Medical-Vocational Rule 202.14 as a framework for
decision-making, the ALJ concluded that there were a significant
number of jobs in the national economy that Ames could perform,

PAGE 5

including work as an addresser and escort vehicle driver.  Tr. 254.

The Commissioner has moved to remand this case for further administrative proceedings.  Although the ALJ found that Ames retained the residual functional capacity to perform a limited range of unskilled light work, her step-five analysis identified only sedentary jobs.  Tr. 254.  Because Ames was a "person closely approaching advanced age" at the time of the decision on remand, however, Medical-Vocational Rule 201.14 would direct a finding of "disabled" were she capable only of sedentary work.  The Commissioner has thus moved to remand again, with specific instructions for the ALJ to consider whether there are any jobs at the light level of exertion that Ames would be capable of performing.

Ames opposes the Commissioner's motion, instead arguing that she is entitled to an immediate award of benefits.  According to Ames, the ALJ failed to comply with the court's March 2003 remand order, which directed her to further consider (1) the opinion of examining psychologist Philip Johnson; (2) the opinion of reviewing psychologist Michael Brown; (3) Ames's subjective complaints; (4) whether Ames has a severe mental impairment, and the combined effect of her impairments; (4) Ames's residual functional capacity, and, if necessary; (5) Ames's ability to perform her past relevant work or other work existing in

PAGE 6

significant numbers in the national economy. Tr. 298-99. While Ames concedes that the ALJ properly evaluated Dr. Johnson's opinion on remand, she argues the ALJ failed to comply with the remand order's four remaining directives. In light of those deficiencies, Ames argues this Court should reverse for payment of benefits. This Court will address each of Ames's arguments in turn.

## A. Listing of Impairments

Ames first maintains that the ALJ failed to consider the combined effect of her impairments, and therefore erred at step three by finding that her condition did not meet or equal the degree of severity specified in any listed impairment. More specifically, she argues the ALJ failed to give sufficient weight to psychiatric review technique and mental residual functional capacity assessment forms filled out by reviewing psychologist Dr. Brown, in which he assessed her functional limitations under Listings 12.04, 12.06, and 12.07. Tr. 165-182. She contends the ALJ ignored the district court's direction on remand to further consider Dr. Brown's opinion, as evidenced by the fact that she "did not include the restrictions given by Dr. Brown in her hypothetical questions to the vocational expert." Pl.'s Br. in Support, 6 (Nov. 4, 2005).

Interestingly, however, review of the ALJ's decision indicates that she in fact afforded his expert opinion "great

weight.  Tr. 252.  For example, Dr. Brown assessed Ames's
limitations under the so-called "B" Criteria of Listings 12.04,
12.06, and 12.07, which require that a claimant demonstrate at
least two of the following: marked restrictions of daily living,
marked difficulties in maintaining social functioning, marked
difficulties in maintaining concentration, persistence, or pace,
or repeated episodes of decompensation.  Dr. Brown assessed
Ames's limitations in these areas, but found that she had only
mild restrictions of activities of daily living, mild
difficulties in maintaining social functioning, moderate
difficulties in maintaining concentration, persistence, or pace,
and no repeated episodes of decompensation. Tr. 175.  Dr. Brown
also completed a mental residual functional capacity assessment
form, finding that Ames was only moderately limited in her
ability to maintain concentration for extended periods, complete
a normal workday without interruption, interact appropriately
with the general public, respond appropriately to changes in work
setting, and set realistic goals.  Tr. 179-180.  He identified no
other significant limitations.  Tr. 179-80.

   Dr. Brown's opinion simply does not support a finding that
Ames's condition was severe enough to meet or equal the criteria
for affective disorders as set forth in Listing 12.04, for
anxiety related disorders as set forth in Listing 12.06, or for
somatoform disorders as set forth in Listing 12.07.  As the ALJ

PAGE 8

properly noted, "[n]o treating or examining physician," including
Dr. Brown, "has mentioned findings equivalent in severity to the
criteria of any listed impairment." Tr. 250. The ALJ clearly
complied with the district court's order to consider Dr. Brown's
opinion on remand. The ALJ also accounted for Dr. Brown's
opinion when questioning the vocational expert, asking him to
consider a hypothetical individual who "has the ability to reason
and understand within normal limits, memory, long and short term,
is within normal limits." Tr. 291. The ALJ indicated that the
individual "would be limited to the performance of repetitive,
simple...tasks of no more than three steps," have "variable
concentration ability so she could not focus on jobs which
require very detailed attention," and "should avoid jobs in which
she has a significant amount of interaction with members of the
public." Tr. 292. The ALJ thus accounted for the substance of
Dr. Brown's findings when eliciting testimony from the vocational
expert.

Citing Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir.
2000), Ames also contends the ALJ committed reversible error by
failing to fill out and attach a psychiatric review technique
form (PRTF). In Gutierrez, the Ninth Circuit held "that where
there is a colorable claim of mental impairment, 20 C.F.R. §
404.1520(a) requires [a PRTF] to be completed and appended to the
decision, and the failure to do so requires remand to the Social

PAGE 9

Security Administration." <u>Gutierrez</u>, 199 F.3d at 1051.

The regulation upon which the <u>Gutierrez</u> court relied has since been amended, and no longer requires that a PRTF be completed at the administrative law judge hearing level. Rather, the applicable regulation now provides, in pertinent part, as follows:

> At the initial and reconsideration levels of the administrative review process, we will complete a standard document to record how we applied the technique.  At the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), we will document application of the technique in the decision...

> (2) At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas...

> 20 C.F.R. § 416.920a(e)(2000).[1]

The ALJ in this case effectively adopted, or incorporated,

Dr. Brown's findings as to Ames's functional limitations as a

result of her mental impairments.  The ALJ stated that she

---

[1] 20 C.F.R. § 416.920a is substantively identical to 20 C.F.R. §404.1520a, both of which govern the Commissioner's evaluation of mental impairments.   20 C.F.R. Part 404 governs eligibility for Federal Old Age, Survivors, and Disability Insurance, whereas Part 416 governs eligibility for Supplemental Security Income for the Aged, Blind, and Disabled.  Because Ames appeals the denial of her application for SSI benefits, 20 C.F.R. 416.920a is the applicable regulation.

concurred with Dr. Brown's opinion as set forth in the "Psychiatric Review Technique and Mental Residual Functional Capacity Assessment" forms, and was assigning it great weight. Tr. 252.  The ALJ specifically referenced Dr. Brown's opinion that "due to her mental impairment, the claimant is limited in her ability to work with the public."  Tr. 252.  The ALJ also incorporated examining psychologist Dr. Johnson's assessment, finding that Ames's "ability to: reason and understand were within normal limits; remember was acceptable; concentrate and persist was variable; interest in a social manner was acceptable; [and] tolerate or adapt to stress was diminished."  Tr. 252.  The ALJ properly incorporated Dr. Brown's assessment, as well as Dr. Johnson's, and discussed the medical records she considered in reaching her conclusion as to the severity of her mental impairments.  The ALJ thus satisfied her obligations under 20 C.F.R. § 416.920a.

For these reasons, the Court finds that the ALJ did not err at step three by finding that Ames's impairments did not meet or medically equal one of the listed impairments.

**B.  Treating Physician**

Ames next argues that the ALJ failed to cite sufficient reasons for rejecting the opinion of her treating physician, Dr. Robert Bush.

A treating physician's opinion is entitled to greater weight

PAGE 11

than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the records. 20 C.F.R. § 404.1527(d)(2).

The Commissioner may disregard the treating physician's opinion whether or not that opinion is contradicted. Magallanes, 881 F.2d at 751. In discounting the controverted opinion of a treating physician the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). To do so the ALJ must set forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes, 881 F.2d at 751. If the treating physician's opinion is contradicted by a nontreating physician, and the nontreating physician's opinion is not based on independent clinical findings, or is based on the same information utilized by the treating physician, the ALJ may only reject the treating physician's opinion if the

PAGE 12

ALJ gives specific, legitimate reasons for doing so and those reasons are supported by substantial evidence in the record. Andrews, 53 F.3d at 1041. Because Dr. Bush's opinion was contradicted by that of a reviewing physician, who indicated that Ames was capable of medium work, the ALJ could reject it by citing specific and legitimate reasons. Tr. 298-205.

Here, Ames argues the ALJ failed to cite sufficiently specific and legitimate reasons for rejecting a residual functional capacity assessment form filled out by Dr. Bush, in which he indicated she could perform only sedentary work. Tr. 418-422. As the ALJ noted, Dr. Bush indicated in the RFC form that Ames "was only capable of performing sedentary work because of chronic lumbar disc disease, chronic pain syndrome, and chronic RA." Tr. 251; 422.

The ALJ ultimately assigned little weight to Dr. Bush's assessment on the basis that it was "not well supported and inconsistent with the other substantial evidence in the case record." Tr. 251. Most significantly, the ALJ found that while Dr. Bush indicated his assessment was based in part on the fact that Ames suffered from chronic rheumatoid arthritis, the "the objective evidence of record does not substantiate that the claimant has RA." Tr. 251. Nowhere in Dr. Bush's contemporaneous treatment notes does he diagnose Ames with chronic rheumatoid arthritis. In fact, Dr. Bush stated in

January 2003 that laboratory results were "negative" for rheumatoid arthritis.  Tr. 325.  Dr. Hsu similarly found in October 2003 that Ames was "rhuematoid factor negative."  Tr. 441.  The ALJ properly rejected Dr. Bush's opinion on the RFC form on the basis that it was not supported by the objective medical evidence, including his own treatment notes.

As the ALJ further explained, Dr. Bush's opinion limiting Ames to sedentary work was undermined by the fact that "[t]reatment for [Ames's] symptoms has been conservative and there has been no recommendation for more aggressive measures."  Tr. 251.  The ALJ included a detailed discussion of the medical evidence throughout the text of her decision, noting that Dr. Bush managed her reported symptoms "conservatively with various medications and epidural steroid injections," and the results of a physical examination in January 2003 were "unremarkable except for tenderness and painful range of motion at the right wrist secondary to injury."  Tr. 248; 325.  The medical records indicate that Prednisone was largely effective in controlling Ames's arthralgia, but that her symptoms would return if she discontinued treatment.  Tr. 322.  Dr. Hsu wrote in August 2003 that Ames had a "[h]istory of arthraligas with symptoms responsive to prednisone."  He indicated that Ames was "currently taking a total of 15 mg of prednisone a day and her symptoms are nearly resolved."  Tr. 449.

PAGE 14

As the ALJ explained, Dr. Bush's residual functional capacity assessment was inconsistent with other medical evidence as well. For example, examining physician Dr. Saleem Khamisani found in October 2000 that Ames had a "full and normal range of motion at cervical spine," had "full and normal range of motion at shoulders, elbows, wrists, and fingers bilaterally," and had "full and normal range of motion at hops, knees, ankles and toes bilaterally." Tr. 155. He noted that "examination of lumbar spine reveals diffuse tenderness," but found "no paraspinal spasm," and "no tenderness at sacroiliac joints, sciatic notches or trochanters." Tr. 155. He recommended that she "avoid repetitive bending, twisting, squatting, and heavy lifting." Tr. 156. The ALJ incorporated these limitations into her residual functional capacity assessment, finding that Ames should not perform work requiring "repetitive bending, twisting, squatting, stooping or crouching." Tr. 254.

Based on the foregoing, the Court concludes the ALJ properly rejected Dr. Bush's residual functional capacity assessment because it was "inconsistent with other substantial evidence in the case record," including his own treatment notes. Tr. 251.

**B. Credibility**

Ames next argues that the ALJ failed to cite sufficiently clear and convincing reasons for rejecting her testimony as to the extent of her limitations.

PAGE 15

In considering a claimant's credibility with regard to subjective symptom testimony an ALJ must perform a two-stage analysis: (1) the *Cotton* test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). The Cotton test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1281-82 (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) and Cotton, 799 F.2d at 1407-08; 20 C.F.R. § 404.1529(a) and (b)).

If the Cotton test is satisfied and there is no evidence of malingering, then the ALJ can reject subjective testimony as to severity of a claimant's symptoms only by citing specific, clear and convincing reasons for doing so. Smolen, 80 F.3d at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. Smolen, 80 F.3d at 1284. However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." Reddick v. Chater, 157 F.3d 715, 722 (9th

PAGE 16

Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In assessing credibility the ALJ must also consider the factors set forth in SSR 96-7p including:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p; See also 20 C.F.R. § 404.1529(c).

Here, the ALJ found that Ames suffers from degenerative disc disease of the lumbar spine, arthralgias, and depression not otherwise specified, each of which constituted a severe impairment. Tr. 254. The medical records clearly support the ALJ's finding in this regard, and further establish that those impairments can reasonably be expected to produce some degree of symptom. Tr. 318-453. Ames has thus made a showing sufficient

to meet both prongs of the *Cotton* test.

At her hearing before the ALJ, Ames testified as to the severity of her symptoms.  For example, she testified that she felt she was incapable of working due to numbness in her hands, insomnia, pain, bipolar disorder and depression.  Tr. 261.  She also testified that she has poor vision, and described problems managing feelings of anger and irritability. Tr. 273-75; 280-81. The ALJ acknowledged Ames's testimony, but found that "[t]he weight of the objective evidence demonstrates that [her] allegations of limitation...[were] not entirely credible considering the criteria set forth in Social Security Ruling 96-7p."  Tr. 250.  The ALJ set forth several reasons supporting her credibility determination, only two of which are specifically challenged by Ames.

First, Ames argues the ALJ erred by finding the fact that she had not been referred to a pain management clinic undermined her credibility.  The ALJ indeed explained that Ames "has flare-ups during which she has joint pain and swelling, but for the most part her symptoms are stable with conservative treatment. This is to say, that she has not required surgery and has not been referred to a pain management clinic. She has gone to the emergency room for pain, but has not had any hospitalizations." Tr. 251.  As discussed above, the medical records indicate that Ames's arthralgia was largely controlled with Prednisone.  The

PAGE 18

ALJ properly found the fact that her symptoms were stable with medication, and did not require referral to a pain management clinic, undermined her complaints of incapacitating pain.

Second, Ames argues the ALJ erred by discrediting her testimony based in part on evidence of her daily activities. The ALJ found that Ames's "own statements as to general daily activities evidence an individual who does most of her housework, maintains contact with family and friends who visit her occasionally, and is able to maintain concentration and attention to things that are of interest to her." Tr. 251. Ames indeed testified that she does the grocery shopping, washes the dishes, does the laundry, does the cooking, and takes care of her own personal hygiene. Tr. 278-79. She also testified that she has friend who comes to help her with heavy housework, and described how her friends have learned to put up with and laugh at her occasional outbursts, indicating she indeed socializes. Tr. 279; 281. The ALJ properly found the fact that Ames engaged in these daily activities undermined her allegations of total disability. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (finding that claimant's level of activities undermined her subjective complaints of pain).

Ames does not specifically challenge the remaining reasons cited by the ALJ in support of her credibility determination. For example, the ALJ found her testimony that she "spent her days

PAGE 19

hiding in the house," "cried excessively," and "was easily angered and irritated and often screamed and yelled," less than believable in light of the medical evidence, whish established that "her symptoms related to the bipolar condition [were] essentially controlled with medication prescribed by Dr. Bush." Tr. 251.

The ALJ also found that, while Ames "testified that she had breathing problems with walking," the record contained "no evidence of treatment for respiratory problems." Tr. 251. This is only partially correct. It is true that there are no medical records evidencing treatment for respiratory problems related to mild physical exertion, such as walking. She did, however, report to Dr. Hsu in August 2003 that she experienced "shortness of breath after walking 1-2 blocks, which is stable." Tr. 451. Although Dr. Hsu noted Ames's complaint, there is no indication that Dr. Hsu actually treated her for any respiratory problem.

The record also contains references to a history of asthma, which led examining physician Dr. Khamisani to recommend that she "avoid exposure to fumes, chemicals and extremes of weather." Tr. 156. The ALJ in fact recognized that Ames had a history of asthma, and incorporated Dr. Khamisani's recommendations into her hypothetical. Tr. 254; 291. Thus, while the ALJ's statement is not entirely correct, the Court nevertheless finds that the ALJ cited sufficiently clear and convincing reasons for finding

PAGE 20

Ames's testimony not entirely credible.

### D. Vocational Expert Testimony

Finally, Ames argues the ALJ erred by failing "to include the debilitating effects of claimant's need to lie down, fatigue, sleep disturbance and other limitations given by her physicians and in claimant's testimony in her first hypothetical." Pl.'s Br. in Support, 16. While Ames argues the ALJ should have referenced her "need to lie down," she fails to cite to any evidence of record establishing such a limitation. Review of Ames's testimony reveals no discussion of an alleged need to lie down during the day. Moreover, as explained above, because the ALJ cited sufficiently specific and legitimate reasons for rejecting Dr. Bush's RFC, she was not required to incorporate those limitations into her hypothetical. Similarly, because the ALJ cited sufficient reasons for rejecting Ames's testimony as to the extent of her limitations, she was not required to include those in her hypothetical. Review of the record indicates that the ALJ properly incorporated those limitations identified by examining physician Dr. Khamisani, and many of those discussed by Drs. Johnson and Brown, into the hypothetical question she posed to the Vocational Expert. And while a reviewing physician indicated that Ames was capable of medium work, the ALJ reduced her residual functional capacity to a limited range of light work, in light of medical evidence that had not been reviewed by

that physician.  Tr. 252.

**E.  Motion to Remand**

For all the reasons discussed above, the Court finds that the ALJ's determination that Ames retained the residual functional capacity to perform a limited range of light work is supported by substantial evidence.  As the Commissioner notes, however, the record indicates that the ALJ erred in her step five analysis.  Although she found that Ames retained the residual functional capacity to perform a limited range of unskilled light work, she did not identify any light level jobs.  Rather, she found that Ames was capable of working as an addresser and escort vehicle driver - both sedentary jobs.  As the Commissioner recognizes, this is problematic because Ames was a "person closely approaching advanced age" at the time of the decision, and Medical-Vocational Rule 201.14 would direct a finding of "disabled" were she only able to perform sedentary work.  Because of the ALJ's error at step five, this case should be remanded with specific instructions for the ALJ to consider whether Ames can perform other work in the national economy considering her age, education, and residual functional capacity.  The Court is quite concerned about the length of time this claim has been pending, but is not permitted to award benefits for that reason alone.

**V. CONCLUSION**

Based on the foregoing,

**IT IS RECOMMENDED** that Ames's Motion for Summary Judgment be **DENIED**, and the Commissioner's Motion to Remand be **GRANTED**. This case should be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) to consider the whether Ames can perform other work in the national economy considering her age, education, and residual functional capacity.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DONE and DATED this 18th day of September, 2006.

Carolyn S. Ostby
United States Magistrate Judge